IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

EARL W. VARNELL,                )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No. CIV-11-276-KEW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

**OPINION AND ORDER**

Plaintiff Earl W. Varnell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 6, 1967 and was 43 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade. Claimant worked in the past as a truck driver, saw operator, and delivery man. Claimant alleges an inability to work beginning April 4, 2009 due to limitations

3

resulting from back pain and leg numbness.

**Procedural History**

On April 6, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 4, 2009, an administrative hearing was held before ALJ Michael A. Kirkpatrick in Poteau, Oklahoma. On December 6, 2010, the ALJ issued an unfavorable decision. On July 1, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a wide range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to include all of Claimant's impairments in his RFC assessment; (2)

4

reached an improper RFC determination; and (3) engaged in an improper step five analysis.

**Evaluation of Claimant's Impairments**

Claimant first contends the ALJ failed to include a mental impairment or Claimant's gastrointestinal ailments and intestinal bleeding in his step two findings. Claimant's original problems arose from a stab wound in his back in February of 1999. Claimant suffered weakness of the right lower extremity and decreased sensation in the left lower extremity. Claimant underwent surgery where it was revealed that he had a bone fragment from T12 and a contusion to his spinal cord. He experienced marked weakness on the right and walked with assistance. Claimant was diagnosed with a cord contusion at T12 secondary to a penetrating wound. (Tr. 178).

On July 10, 2009, Dr. Jimmie W. Taylor provided a consultative physical examination of Claimant. He found Claimant had residual weakness and neuropathy of the right leg secondary to previous stabbing, hyperlipidemea, and a history of rectal bleeding. (Tr. 196). Claimant had good range of motion in his back. He favored his right leg but had a safe gait. Heel, toe, and tandem walk was 4/5, 4/5, and 3/5 with weakness in the right leg. (Tr. 195).

On April 27, 2009, Claimant was attended by Dr. Jennifer

5

Scoufus, complaining of a cough and bright red rectal bleeding. (Tr. 214). Dr. Scoufus ordered a colonoscopy which showed small external hemorrhoids. (Tr. 222). Claimant was later diagnosed with chronic gastritis and received Prilosec for treatment. (Tr. 221).

On August 10, 2009, Dr. Scoufus also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on Claimant. She found Claimant could occasionally lift/carry less than 10 pounds, no weight frequently, stand and/or walk less than 2 hours in an 8 hour workday, sit for less than 6 hours in an 8 hour workday, limited in his ability to push or pull in his lower extremities. (Tr. 218). She estimated Claimant could occasionally climb and kneel but never balance, crouch, or crawl. She stated that due to nerve damage to Claimant's right leg, climbing was unsafe, his balance was not good, he falls over, cannot kneel on his right leg, and crouching and crawling was painful. (Tr. 219). Claimant's reaching, handling, fingering, and feeling were unlimited. He was limited in his exposure to vibration and hazards. (Tr. 220).

On December 1, 2009, Dr. Diane Brandmiller conducted a mental status examination on Claimant. Claimant reported he was experiencing flashbacks from the stabbing. He attempted to seek treatment but was nervous and left. Claimant's ex-wife tells him

6

that when the person who stabbed him gets out he will finish him off. Claimant's recent mood was "in the dumps" and had felt that way for the past five to seven years. He sleeps two hours per night and sometimes has nightmares. His energy level was low and his concentration was "OK." Dr. Brandmiller diagnosed Claimant with mood disorder, NOS with a GAF of 61-70. She found Claimant's long term memory was intact but his short term memory, concentration, and abstract thinking were mildly impaired. His expressive and receptive language skills were intact. He appeared able to understand and carry out simple instructions. He would need assistance in managing funds due to his limitations in subtraction and inability to write checks. (Tr. 226-30).

On January 14, 2010, Dr. Sally Varghese completed a Psychiatric Review Technique form on Claimant. She determined Claimant suffered from an affective disorder; specifically, depressive syndrome characterized by appetite disturbance with change in weight, sleep disturbance, and decreased energy. (Tr. 231-34). She found Claimant had mild limitations in restriction on activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 241).

In his decision, the ALJ concluded Claimant's mental impairment was not severe based upon the findings of Dr. Varghese

7

and considering the evaluation by Dr. Brandmiller. (Tr. 20-21). The burden of proof at step two is on the plaintiff. See <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); see <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. <u>Williams</u>, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

No evidence in the record indicates that Claimant's affective disorder, though diagnosed, affects his ability to engage in work

activity. No medical professional has provided an opinion of diminished mental capabilities caused by the disorder. Claimant in large measure simply seeks an award of benefits for the existence of a medical condition which is without foundation.

Claimant next contends the ALJ should have included gastrointestinal ailments and intestinal bleeding as severe impairments at step two. The parties agree that three medical records indicate some type of intestinal bleeding. The first from November 4, 2005 from the emergency room shows Claimant reported bright red stools on three occasions with rectal discomfort. (Tr. 159). The second from March 28, 2001 indicates Claimant underwent surgery for a radial hemorrhoidectomy. (Tr. 175). The third and final record on this subject was from May 8, 2009 when Claimant complained of bloody bowel movements. Claimant underwent a colonscopy but the bleeding was attributable to hemorrhoids. (Tr. 222, 322-24).

Claimant speculates that this condition would "necessitate greater-than-normal breaks to use the restroom, lack of concentration due to the interference from his pain, and other negative effects." No medical professional has made such a finding of severity. Indeed, the time between treatments was several years. Moreover, although Claimant characterizes the condition as "intestinal bleeding," in fact, the diagnosis was external

9

hemorrhoids. The ALJ did not err in failing to include this condition at step two as a severe impairment.

## RFC Determination

Claimant also contends the ALJ reached an improper RFC by failing to give the opinion of Dr. Scoufus controlling weight. The ALJ found Dr. Scoufus (1) was not a treating source whose opinion was entitled to controlling weight or entitled to substantial weight; (2) failed to identify any medical findings which support a conclusion of disability; (3) did not provide pain medication to Claimant for his condition; and (4) rendered a opinion not supported by other evidence in the record.

This Court agrees with Defendant that the ALJ did not find Dr. Scoufus to not be a treating physician as Claimant suggests. Rather, the ALJ found her opinion was not entitled to controlling weight because it was not supported. Dr. Scoufus' treatment notes repeatedly found Claimant's abdomen, extremities, joints, and general appearance were within normal limits. (Tr. 210-14). The ALJ examined Dr. Scoufus' findings on physical limitations under the <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003) rubric and determined the opinions were not entitled to controlling weight or any significant weight. This Court finds no error in the ALJ's assessment of and reduction in weight attributed to Dr.

Scoufus' opinion.

Claimant repeatedly states the ALJ had a duty to develop the record in ordering additional consultative testing and evaluations by Dr. Taylor and Dr. Brandmiller. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361. The primary consideration on review is whether the record was sufficiently developed to reflect (1) the nature of a claimant's alleged

impairments; (2) the ongoing treatment and medication the claimant is receiving; and (3) the impact of the alleged impairment on a claimant's daily routine and activities. Musgrave v. Sullivan, 966 F.2d 1371, 1375 (10th Cir. 1992). When a claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be able to rely upon the claimant's counsel to present the claimant's case in a way such that all claims are adequately explored without imposing an additional duty to develop the record on the ALJ. Hawkins v. Chater, 113 F.3d 1162, 1167-1168 (10th Cir. 1997). As a result, an ALJ is not required "to order a consultative examination unless the need for one is clearly established in the record." Id. at 1168.

The evidence in the record did not give rise to a clear need for a consultative examination to simply compare the reports of different physicians "apples-to-apples" as Claimant urges. Thus, this Court finds no error in the ALJ's failure to employ the services of an additional consultative examiner.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

12

IT IS SO ORDERED this 30th day of July, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE